Curia, per
Colcock, J.
Did Robert Crawford, the grantor, take a fee in the lands devised to him by his father’s will ?
The question has very properly been called questio vexata. It may be said, that a majority of the court also concur; for although the chancellor has described that Robert took only a life estate in the land devised to him by his father, is obviously against his own opinion, and the repeated decisions of that court, of which he has been so long and so distinguished a member, and only in conformity with what he has supposed to be the decision of the late court of appeals at law, but which decision is not considered as affecting the rights of the complainant, as I shall hereafter show.
This is a question on which I venture to say that there is a greater diversity of opinion among those who have gone most fully into it than can be found in any other. I *take it that upon the first introduction of wills there was not any rule of law which required the use of technical words in a will; and this is supported by the authority of 3 Comyn, p. 358, and the statute of wills. Nay, it is the language of all who write on this subject. Judge Blackstone, in speaking of the difference between wills and deeds, in relation to executory devises, says, “The reason of the difference is that the testator is not expected to be acquainted with technical language, and is very often without the aid of those learned in the law,” and l will add, is more often unable to pay them. Whence then originated what is now called the true rule, that there must be words of inheritance, or those which are tantamount, to pass a fee ? On the first introduction of wills, it was obvious, from a reference to the state of things which then existed, and the struggles which have been made to introduce the power to alienate estates, that the first rule in relation to them must be, that the intention of the testator must prevail. But the judges of that day, leaning to the aristocracy of the country and against the alienation of estates, thought proper to introduce the feudal rule which applied to feoffments and grants, the only conveyances then in use in relation to wills, “that where an estate was con *438 veyed without limitation, no more than an estate for life passed, and the reversion descended to the heirs/’ In a short time, however, they were driven from this position, and they were obliged, where the intention had been manifestly and obviously expressed, to depart from the rule which required the use of technical language, and in this march there has been from time to time a gradual departure from the rule which was adopted by the authority alone of the judges of England. But it is said, you have gone far enough, and must stop at the last decisions which have been made in England on this subject; and let me ask ? Is it simply because they *have laid down the rule so far? I am no advocate for innovation upon the well established doctrines of the law; nor am I blindly disposed to follow the decisions of English judges. Indeed there is not much encouragement to follow them on this subject, when we find some of them regretting that there ever was any departure from the rigid common law rule in relation to grants, and others, that they are shackled by any rule on the subject.
What is the reiterated language on the subject of the construction of wills? That the intention shall govern : that is, when it does not violate the established doctrines of law; as that a man shall not be permitted to create a perpetuity. Now is it not a mockery to say to a man, “you may make such a disposition of your estate as you think fit,” and then to destroy his will because it does not contain expressions which the testator never heard of? In order to arrive at the intention of a testator, the whole will is to be taken together when the intention is not clearly expressed in any particular clause.
The question here is. what did he intend when he said, “ I will and bequeath to my> son, Robert one half of my plantation whereon I now live, joining Wren and Roper?”
There are no words of inheritance or limitation : therefore it is said, he only intended to give a life estate. But on reading the whole will, it is impossible not to conclude that the testator sat down to dispose of his whole estate, and rose up with the firm conviction that he had done so. In the case of Hall v. Goodwyn, the court were equally divided on this subject; but as the case was decided by myself on the circuit, the opinion of the other three judges prevailed by the provisions of the act, which declared that the opinion of the circuit judge who tried the cause should not be taken in the ultimate decision of the case. There the intention to *pass afee was considered as manifested by the use of the word “estate,” which it is said comprehends all a man has; and many authorities directly in point were referred to. Put that intention may be collected from the whole will taken together, as well as, if not better than, by the use of a single expression. In the case of Richardson and wife v. Noyes, 2 Mass. Rep. 59, Sedgwicke, Justice, says, “I do think that courts ought to make a liberal construction of wills, and not to restrain in the consideration of those circumstances which tend to enlarge from life estates to fees. For I am satisfied that the idea expressed by Lord Mansfield in Loveacres v. Blight, 1 Cowp. 355, is correct. ‘I really believe almost every case determined by this rule as applied to a devise of land in a will has defeated the real intention of the testator; for common people and even those who have some knowledge of the law, do not distinguish between a be *439 quest of personalty and a devise of land or real estate. But as they know when they give a horse they give him forever, so they think when they give land it will continue to be the sole property of the person to whom they left it.”'
This language is peculiarly applicable to the case before us, for the testator has made that only distinction which occurs to ordinary men between giving and lending'. When he does not intend to give absolutely, he lends for a time. And it is further manifest that he intends to give absolutely when he does give : first from the circumstance of his making no provision for any remainder; and secondly from his charging the estate with the payment of money for the support of the mother. And this has been considered since the case of Collier, 37 Eliz. p. 16 in Coke’s Rep. part 6, as evidence of an intention to pass the fee; and I should conceive it a waste of tim'e to refer to authorities on that point, when *it has been so repeatedly decided in our own courts. See 3 Desaus. Rep. 249, and Hall v. Goodwyn.
I cannot conclude this part of the case without repeating what I have formerly so much relied on in support of my opinion on this controverted point. That distinction which once existed between real and personal property has been gradually lost sigh of, and it very often happens that a testator is more concerned about the disposition of his personal than of his real property. How then is it to be expected that ordinary men should suppose that more formality was required in disposing of an hundred acres of pine land, than indisposing of two or three prime negroes ?
The legislature however having interposed, and declared that no words of inheritance are now necessary to pass a fee, I should think that the case, ought to be decided as the case of Gibson v. Taylor was,— by giving up an opinion in a controverted point, which for the future is put at rest : and in this view of the case my brother Johnson concurs. The decree of the chancellor is therefore reversed.